# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| AMBROSE O. ESOGBUE | : | DOCKET NO. 2:06-cv-334<br>Section P |
| VS. | : | JUDGE MINALDI |
| ALBERTO GONZALES, ET AL | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by petitioner, Ambrose O. Esogbue. This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner is under a final removal order, and he has been in post-removal-order detention since November 1, 2004. In his petition, he challenges his post-removal-order detention as being indefinite and unconstitutional. He claims that there is no significant likelihood of his being removed to Nigeria in the reasonably foreseeable future.

Based upon the evidence in the record, the undersigned determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition. An evidentiary hearing was held on July 11, 2006 and the evidence was limited to whether there is a significant likelihood of removing Petitioner in the reasonably foreseeable future, whether the petitioner has been detained beyond what is reasonably necessary to secure his removal, and/or whether petitioner has taken steps to hamper the removal efforts of the United States Immigration & Customs Enforcement. [doc. 14].

## FACTUAL SUMMARY

The court will summarize the facts regarding petitioner and his detention as best it can from the evidence in the record and the testimony presented at the evidentiary hearing.

Petitioner is a native and citizen of Nigeria who entered the United States on October 11, 1969 as a non-immigrant student. Subsequently he married a United States citizen and adjusted his status to that of a lawful permanent resident on September 24, 1974. *See* Government Exhibit 1.

On September 17, 1980, petitioner was convicted in a New York state court of possession of marijuana. *Id.* On April 20, 1994, petitioner was found guilty of one count of Conspiracy in violation of 18 U.S.C. § 371 and three counts of mail fraud in violation of 18 U.S.C. § 1343 following a jury trial in the United States District Court for the Southern District of Texas. *See USA v. Esogbue*, 4:93-cr-00257-01 (S.D. Tex). For these offenses, petitioner was sentenced on August 11, 1994 to 37 months imprisonment and a 3 year supervised released term on each count, with the sentences to run concurrently. He was also ordered to pay $980,000.00 in restitution, a $6000 fine, and a $200 special assessment. *Id.,* [doc. 157]. Petitioner appealed his conviction and sentence to the Fifth Circuit Court of Appeals. On March 11, 1996, the Fifth Circuit affirmed the judgment of the district court. *Id.,* [doc. 216]; *USA v. Esogbue*, 94-20615, 79 F.3d 1145 (Table) (5th Cir. 1996).

Based upon his convictions, the INS issued an Order to Show Cause on March 8, 1996, charging petitioner with being deportable under INA § 241(a)(2)(B)(i) as an alien convicted of a controlled substance violation, § 241(a)(2)(A)(ii) as an alien convicted of two or more crimes involving moral turpitude not arising out of a single scheme of misconduct, and § 241(a)(2)(A)(iii) as an alien convicted of an aggravated felony. *See* Government Exhibit 1.

On January 23, 1997, an immigration judge in Dallas, Texas found petitioner to be deportable as charged and ordered his removal from the United States. *See* Government Exhibit 2. Petitioner appealed this decision to the Board of Immigration Appeals (BIA). Because the entire record from the deportation proceedings could not be located, the BIA remanded the matter to the immigration judge to obtain a transcript or create a reviewable record. *See* Government Exhibit 3.

On remand, another immigration judge conducted *de novo* deportation proceedings, and on September 29, 1999, petitioner was again ordered deported based upon the findings of the immigration judge that petitioner was convicted of an aggravated felony, a controlled substance violation, and more than one crime involving moral turpitude. *Id.*, p.8. The immigration judge also found that petitioner had not applied for relief from removal. *Id.,* p.7. Petitioner appealed this decision to the BIA. On May 12, 2000, the BIA affirmed the decision of the immigration judge finding petitioner deportable as charged and dismissed his appeal. *See* Government Exhibit 4.

Thereafter petitioner filed a timely Motion to Reconsider and a Motion for Stay with the BIA, arguing that he did not have an opportunity to file a brief on appeal. *See* Government Exhibit 21, p.4. On July 28, 2000, the BIA granted petitioner's motion to stay his deportation pending further review, and on September 11, 2000 the BIA reinstated the petitioner's appeal. *Id.* The BIA dismissed this appeal on May 5, 2003, finding petitioner to be deportable as charged and ineligible for relief under INA § 212(c). *See* Government Exhibit 5.

Following the dismissal of his appeal by the BIA, the petitioner filed a Motion to Reconsider, requesting relief from deportation under INA § 212(c). *See* Government Exhibit 21, p.5. The BIA denied this motion on November 14, 2003, finding that petitioner had never filed an application for § 212(c) relief and that even if he had, he would be ineligible for such relief. *Id.*

On April 6, 2005, petitioner filed a Motion to Reopen with the BIA, seeking a remand so that he could apply for § 212(c) relief. The BIA denied this motion on October 12, 2005 as untimely. The BIA further noted that petitioner did not apply for § 212(c) relief when given the opportunity to do so and that under the current law, he is ineligible to apply for § 212(c) relief because his conviction was entered after a jury trial. *See* Government Exhibit 6. On November 28, 2005, petitioner filed another Motion to Reopen and Reconsider with the BIA. This motion was denied

3

on January 13, 2006. *See* Government Exhibit 7.

While petitioner was proceeding before the BIA with his numerous appeals and motions, he was also filing challenges to his removal order and detention in the United States district courts.

On July 14, 1998, petitioner filed petition for writ of *habeas corpus* in the United States District Court for the Northern District of Texas challenging his removal order and detention. *See* Government Exhibit 19; *Esogbue v. Strapp*, 3:98-cv-1630 (N.D. Tex). This petition was dismissed on March 23, 1999 for lack of subject matter jurisdiction. *Id.*

On July 28, 2000, petitioner filed a petition for writ of *habeas corpus* in the United States District Court for the Middle District of Pennsylvania. *Esogbue v. Holmes*, 3:00-cv-1344 (M.D. Pa.). In this petition, petitioner sought a remand to the BIA so that he could obtain transcripts of his deportation proceedings and file an appeal brief. He also sought a stay of deportation and his immediate release from detention. *See* Government Exhibit 20, *Esogbue v. Holmes*, 3:00-cv-1344 (M.D. Pa.), doc. 1, p.2. On July 28, 2000, that court entered a stay of deportation. *See* Government Exhibit 20. Because the BIA granted petitioner's Motion for Reconsideration on September 11, 2000, the district court in Pennsylvania believed that the issue before it was moot and administratively closed its case on December 28, 2000, subject to being reopened when a final decision of the BIA was rendered. *See* Government Exhibit 20.

On November 10, 2004, petitioner filed a petition for writ of *habeas corpus* in the United States District Court for the Eastern District of Louisiana. *Esogbue v. Attorney General*, 2:04-cv-3079 (E.D. La.). In this petition, the petitioner challenged his deportation order, sought remand to the BIA for determination of his eligibility for § 212(c) relief, sought a stay of deportation, and challenged his detention under *Zadvydas v. Davis*, 121 S.Ct. 2491 (2001). *See* Government Exhibit 21. In a seventeen page decision that addressed each of petitioner's claims, the court denied the

4

petition on March 22, 2005. *Id.* With respect to petitioner's challenge to his detention, the court found that the removal period was tolled while petitioner was exhausting his judicial remedies. Specifically, the court stated:

> [T]he Fifth Circuit has held that if an alien intentionally prevents the INS from effecting his removal, the removal period would be equitably tolled. Thus, the period does not run while the INS is prevented from effecting removal or until the alien begins to cooperate with the INS in effecting his removal. As conceded by Petitioner, the Nigerian government is waiting to issue travel documents until Petitioner has exhausted his judicial remedies. Thus, Petitioner's habeas petition is currently acting to prevent his removal. Consequently, the removal period is tolled while this petition has been pending and Petitioner's argument under *Zadvydas* fails.

*See* Government Exhibit 21; *Esogbue v. Attorney General,* 2:04-cv-3079 (E.D. La..) Doc. 11, p.16.

On April 7, 2005, petitioner filed a "Petition for Writ of Habeas Corpus, Pursuant to 28 U.S.C. § 2241, and Request for Stay of Deportation" in the United States District Court for the Middle District of Pennsylvania. *See* Government Exhibit 20. On April 8, 2005, the court in Pennsylvania granted a stay of deportation, reinstated petitioner's 2000 petition, and ordered the respondent to show cause why the petition should not be granted. *See* Government Exhibit 20, *Esogbue v. Holmes*, 3:00-cv-1344 (M.D. Pa.), doc. 38, p.2. On April 12, 2005, the government filed an "Emergency Motion to Lift the Stay of Removal." *Esogbue v. Holmes*, 3:00-cv-1344 (M.D. Pa.), doc. 39. In support of this motion, the government stated that the Immigration & Customs Enforcement had obtained a travel document for petitioner and that he could be scheduled for removal within 24 hours if the stay was lifted. *Id.,* doc. 39, p.3, ¶¶ 11-12. On April 13, 2005, the court in Pennsylvania dismissed the petition and lifted the stay. In doing so, the court noted that the federal court in Louisiana had considered and dismissed a petition which raised the same issues and that the petition before it was successive[1] and filed with the intent to impede the removal process.

---
[1]To the extent that the 2005 petition filed in Pennsylvania raised new issues not presented to the Louisiana court, the court found that dismissal was appropriate due to abuse of the writ. *Esogbue v. Holmes*, 3:0-cv-1344 (M.D. Pa.), doc. 38, p.3, fn.1.

Specifically the court stated

> For the first time, this court was apprised of the decision denying the habeas corpus petition sought in Louisiana on the same issues. Respondent claims that the petitioner is already scheduled for removal from the United States to Nigeria within the next 24 hours, and that his present petition is simply an effort to subvert the entire process which has been exhausted without an appeal of the Louisiana decision. We agree.

Exhibit 20, *Esogbue v. Holmes*, 3:00-cv-1344 (M.D. Pa.), doc. 38, p.2.

Following the dismissal of the petition, the petitioner filed a Motion to Reconsider. *Id.,* doc. 40. This motion was denied on May 5, 2005. *Id.,* doc. 42. Thereafter, petitioner filed a Notice of Appeal, and his appeal was filed with the Third Circuit Court of Appeals on May 24, 2005. *Id.,* doc. 46. By a decision dated July 29, 2005, the Third Circuit affirmed the decision of the district court finding the petition to be successive and/or an abuse of the writ and not subject to review. *Esogbue v. Holmes*, 05-2643 (3rd Cir. 2005). A mandate was issued by the Third Circuit on November 15, 2005. *Id.; Esogbue v. Holmes*, 3:00-cv-1344 (M.D. Pa.), doc. 49.

On August 25, 2005, petitioner filed a petition with the United States District Court for the Eastern District of Louisiana challenging his removal order, *Esogbue v. Gonzales*, 2:05-cv-4006 (E.D. La), and a Petition for Review in the Fifth Circuit Court of Appeals, *Esogbue v. Gonzales*, 05-60861 (5th Cir.). The petition filed in the Eastern District of Louisiana was transferred to the Fifth Circuit Court of Appeals on March 28, 2006 and docketed as *Esogbue v. Gonzales*, 06-60532 (5th Cir.). Both of these petitions for review are still pending in the Fifth Circuit.

In January, 2006, ICE moved petitioner to Batavia, New York for a scheduled charter flight to Nigeria. While present within that jurisdiction, petitioner filed a petition for writ of *habeas corpus* in the United States District Court for the Northern District of New York on January 17, 2006. In that petition, petitioner challenged his removal order and sought a stay of removal. The district court in New York dismissed his petition for lack of jurisdiction on January 23, 2006. *See* Government

Exhibit 24.

On February 23, 2006, the petitioner filed the petition which is currently before this court. In this petition, he challenges only his continued detention in immigration custody. In support of this petition, the petitioner points out that he has been in the custody of ICE awaiting deportation since November 1, 2004, and he argues that there is no significant likelihood of removing petitioner in the reasonably foreseeable future. He further argues that there is no impediment to his removal caused by him because he has not obtained a stay of removal.

In order to rebut the petitioner's argument that his removal is not likely to occur in the reasonably foreseeable future, the government presented the testimony of deportation officer Casey at the July 11, 2006 hearing who testified that a charter flight bound for Nigeria is scheduled for August 2, 2006 and that it is the intention of ICE to place petitioner on that flight if the Nigerian Consulate will issue a travel document for him. Officer Casey further testified that the Nigerian Consulate has indicated its willingness to issue a travel document for petitioner once he no longer has any court proceedings pending.

In light of this testimony and the other evidence in the record, the government argues that petitioner is, in fact, hampering ICE's removal efforts by his continuing litigation. The government contends that petitioner is aware that Nigeria is waiting to issue a travel document for petitioner until he has exhausted all judicial remedies and that but for his continued filings, petitioner would have been removed to Nigeria. In support of its position, the government points out that two travel documents have been issued for petitioner in the past, on July 27, 2000 and on April 8, 2005. *See* Government Exhibit 17. However, both of these travel documents expired without being executed

because of pending litigation.[2]

## LAW AND ANALYSIS

The issue before the court is whether petitioner's prolonged post-removal-order detention is lawful. The government argues that petitioner's detention is lawful and that the removal period has been extended because of the petitioner's actions which hamper efforts to remove him from the United States.

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. INA § 241(a)(1). This 90-day period of time is referred to as the removal period. During this removal period, the alien is subject to detention. INA § 241(a)(2). If the alien is not removed during the removal period, the alien is generally released to supervision. INA § 241(a)(3).

Detention can be extended beyond the 90 day removal period in limited circumstances. INA § 241(a)(6) authorizes the continued detention of certain inadmissible or criminal aliens if the Attorney General determines that the alien is a risk to the community or unlikely to comply with the order of removal. Because the Supreme Court concluded that indefinite detention of aliens under the circumstances set forth in § 241(a)(6) would raise serious constitutional concerns, it construed the statute to contain an implicit "reasonable time" limitation. *Zadvydas v. Davis*, 121 S.Ct. 2491, 2495 (2001). The Supreme Court held that in order to be constitutional, detention pursuant to INA §241(a)(6) must be limited to a period of the time reasonably necessary to bring about the alien's removal. *Zadvydas,* 121 S.Ct. at 2498. The Supreme Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal. *Zadvydas*, 121 S.Ct.

---

[2]The July 27, 2000 travel document was effective for one week from the issue date, and on July 28, 2000, stays were granted by both the BIA and the United States District Court for the Middle District of Pennsylvania. *See* Government Exhibits 20 & 21.

The April 8, 2005 travel document was effective for 30 days. Petitioner obtained a stay of deportation from the United States District Court for the Middle District of Pennsylvania on April 8, 2005. Although this stay was lifted by that court on April 13, 2005, petitioner continued to litigate the matter though a motion to reconsider and an appeal.

8

at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

Additionally, an alien may be detained beyond the 90 day removal period pursuant to the statutory authority of INA § 241(a)(1)(C).[3] This statute provides for the suspension of the removal period whenever an alien acts in a manner to prevent his removal. This statute, like § 241(a)(6), does not contain an express limitation on the length of time that an alien may be detained. However, as the Ninth Circuit has observed, INA § 241(a)(1)(C) does not present the same constitutional concerns raised by INA § 241(a)(6) because "the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003). Thus, an alien cannot assert a viable constitutional challenge to his indefinite detention when such detention is due to own actions. *Id.* at 1061.

The facts before this court establish that Petitioner has been in post-removal-order detention since November 1, 2004, a period greater than six months. However, there is significant evidence in the record that, unlike the detainees in *Zadvydas*, petitioner is responsible for his own plight. The evidence before the court establishes that Nigeria is willing to issue a travel document for petitioner

---

[3]**(C) Suspension of period**
    The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

9

(and, in fact, has done so previously), it is merely awaiting petitioner's exhaustion of all judicial remedies before it does so. While petitioner has a legal right to seek review of his deportation order, it is apparent that his continuing litigation in various forums has hampered the ability of ICE to deport petitioner.[4]

The procedural history recounted above clearly establishes that since petitioner's post-removal-order custody began in November, 2004 until the current time he has had petitions for review pending simultaneously in multiple forums, including the BIA, the federal district courts, and the federal courts of appeal. Not only has the pendency of petitioner's litigation affected the ability of the immigration officials to effect his deportation, petitioner has been able to avoid deportation by requesting and obtaining stays at various times from various courts. Petitioner obtained stays of deportation on or about the same dates as travel documents were issued in July, 2000 and April, 2005. Additionally, in January, 2006, during his one week stay in Batavia, New York, he was able to file a petition in a New York federal court which according to the testimony of Officer Casey resulted in his being removed from the charter flight to Nigeria.[5]

Accordingly, this court finds that petitioner's removal period has been tolled under the statutory provision of INA § 241(a)(1)(C) due to his continuing litigation which acts to prevent his removal. *See Pelich, supra; Powell v. Ashcroft,* 194 F.Supp.2d at 209 (E.D.N.Y. 2002); *see also Balogun v. INS*, 9 F.3d 347, 351 (5th Cir. 1993); *Dor v. District Director, Immigration and*

---

[4]Petitioner argued at the hearing that because no court had characterized any of his litigation as frivolous, his filing of the various petitions in the various forums should not be construed as an action taken to hamper his deportation. Notwithstanding this argument, at least one other court has determined that petitioner filed a petition in order to "subvert" the removal process. *See* Government Exhibit 20. Another court has determined that petitioner's filings have hampered his deportation and tolled the removal period. *See* Government Exhibit 21. Furthermore, INA § 241(a)(1)(C) requires only that the alien act to prevent his removal. As discussed *infra.*, petitioner's litigation has prevented his deportation.

[5]Although the New York court did not issue a stay and ultimately dismissed the petition for lack of jurisdiction, petitioner's filing was sufficient to prevent his deportation at that time.

*Naturalization Service*, 891 F.2d 997, 1002-03 (2nd Cir. 1989).(enter citations) Other courts considering petitioner's challenges have also made similar findings. The United States District Court for the Eastern District of Louisiana found that in light of Nigeria's policy to await exhaustion of judicial remedies before issuing a travel document for petitioner, petitioner's continuing litigation prevented his removal and tolled the removal period. *See* Government Exhibit 21; *Esogbue v. Attorney General,* 2:04-cv-3079 (E.D. La..) Doc. 11, p.16. The United States District Court for the Middle District of Pennsylvania found that petitioner's *habeas* petition hampered removal efforts and characterized his filing as an "attempt to subvert the entire [removal] process." Exhibit 20, *Esogbue v. Holmes*, 3:00-cv-1344 (M.D. Pa.), doc. 38, p.2.

Petitioner understands how the system works, is aware of Nigeria's policy regarding the issuance of a travel document for him[6], and has been able to take the necessary steps at each juncture to avoid deportation. Accordingly, the court finds that because petitioner's continuing litigation is the cause of his continued detention, he cannot convincingly argues that there is no significant likelihood of removal in the reasonably foreseeable future. Once petitioner's legal proceedings are concluded, it is likely that he can and will be removed to Nigeria.

For the reasons discussed above, this court finds that petitioner has hampered the efforts to deport him from the United States and that such actions on his part have tolled the removal period pursuant to INA § 241(a)(1)(C).

Accordingly,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be DENIED and

---

[6]The deportation officer testified that the Nigerian consulate indicated to him and to petitioner that a travel document will issue for petitioner when all of his pending litigation concerning his deportation order is complete. Additionally, in his pleadings before the United States District Court for the Eastern District of Louisiana, petitioner conceded that he was aware of Nigeria's policy not to issue a travel document in his case until all judicial remedies were exhausted.

DISMISSED.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, July 20, 2006.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE